UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 10-80227-CIV-MARRA

JILL KAPLAN,

    Plaintiff,

v.

THE PALM BEACH POPS, INC.,
and ROBERT LAPPIN,

    Defendants.
_____/

**DEFENDANT, PALM BEACH POPS, INC.'S JURISDICTIONAL MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW ON COUNTS IV AND V DUE TO THE ABSENCE OF 15 EMPLOYEES**

Defendant, Palm Beach Pops, Inc. ("Pops" or "Defendant"), pursuant to Rule 56, Fed. R. Civ. P. and Rule 7.5, S.D. Fla. L.R., hereby files this Motion for Summary Judgment on Counts IV and V against Plaintiff, Jill Kaplan ("Plaintiff"), and in support thereof, states as follows:

**SUMMARY OF ARGUMENT**

After a more than four year, consensual relationship with Lappin came to an end, Plaintiff has brought this lawsuit against her former (and Lappin's current) employer, Pops, for hostile work environment discrimination and harassment on the basis of her gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17, and the Florida Civil Rights Act (the "FCRA").[1] However, this Court lacks jurisdiction over Plaintiff's Title VII and FCRA claims, and Plaintiff failed to plead an essential element of these claims. Pops employed less than 15 employees during the time period at issue and, therefore, is not an "employer" within the

---

[1] Plaintiff also asserts state law claims for assault, battery, intentional infliction of emotional distress against Defendant Lappin. Defendants have filed a separate Motion for Summary Judgment addressing the merits of these state law claims as well as the Title VII and FCRA claims (in the event the Court finds that it has jurisdiction over the latter claims).

meaning of Title VII or the FCRA. While Pops contracted with approximately 47 musicians, these musicians were independent contractors and not employees of Pops. All of the facts and circumstances of their relationship with Pops supports their status as independent contractors. For example, they signed independent contractor agreements with FJD Music Contracting Services ("FJD") and were paid by FJD as contractors with no taxes withheld from their paychecks. Additionally, they were free to pursue other opportunities with other groups and organizations, and regularly did so. Indeed, Plaintiff herself recognized that the musicians were independent contractors and not employees in a memo to Pops' few actual fulltime employees. Thus, the musicians and other contractors were not employees of Pops. Therefore, Pops does not meet the definition of "employer" under Title VII and the FCRA, and Plaintiff's Title VII and FCRA claims must fail as a matter of law.

## MEMORANDUM OF LAW

### I.      Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides the framework for deciding a motion for summary judgment. As the rule provides, "[summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it might affect the outcome of the case under governing law. See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 248 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U. S. 317, 322 (1986).

To defeat a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Evers v. GMC, 770 F. 2d 984, 986 (11th Cir. 1985). "Once a party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. GMC, 758 F. 2d 839, 840 (2d Cir. 1985). A plaintiff cannot avoid summary judgment based upon mere subjective beliefs; they do not create issues of fact. Ramsey v. Leath, 706 F. 2d 1166, 1170 (11th Cir. 1983).

**II.      Pops is Entitled to Summary Judgment on Plaintiff's Claims under Title VII and the FCRA Because it is Not an "Employer" within the Meaning of Title VII or the FCRA.**

The Court should grant summary judgment here because Pops does not have the requisite number of employees to be considered an "employer" within the meaning of Title VII and the FCRA, and, therefore, Plaintiff has failed to plead an essential element of those claims. Under Title VII, 42 U.S.C. § 2000e(b), an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." The definition of "employer" is substantially the same under the FCRA (see Fla. Stat. § 760.02(7)) and, because that Act is patterned after Title VII, Plaintiff's FCRA claims are appropriately analyzed in the same way as her Title VII claims. Carabello v. South Stevedoring, Inc., 932 F. Supp. 1462, 1466 (S.D. Fla. 1996).

As this Court has previously acknowledged, summary judgment is appropriate where the plaintiff fails to produce sufficient evidence to show that the defendant had fifteen or more

3

employees during the relevant time period. (Order and Opinion dated Jul. 20, 2010 [DE 40]) (citing Stinnett v. Iron Works Gym/Exec. Health Spa, Inc., 301 F.3d 610 (7th Cir. 2002).) Here, discovery is closed and the evidence shows that, although approximately 47 musicians performed with Pops, these musicians were independent contractors, not employees. During the period of 2004-2009, Pops never employed more than 14 people. Accordingly, Pops cannot be considered an "employer" for the purposes of Plaintiff's claims, and Pops is entitled to summary judgment on these counts.

    A.    <u>The Musicians are Independent Contractors and Not Employees within the Meaning of Title VII and the FCRA.</u>

The musicians' status as independent contractors is a question of law for the Court's determination and is appropriate for resolution on summary judgment. See Cuddeback v. Fla. Bd. of Ed., 381 F.3d 1230 (11th Cir. 2004) (affirming district court's grant of summary judgment finding that the plaintiff was an employee under Title VII); Cobb v. Sun Papers, Inc., 673 F.2d 337, 339 (11th Cir. 1982) (holding that the employee status under Title VII is a question of federal law); Lockett v. Allstate Ins. Co., 364 F. Supp. 2d 1368, 1737 (M.D. Ga. 2005) (citing Farlow v. Wachovia Bank of N.C., N.A., 259 F.3d 309, 313 (4th Cir. 2001) (noting that the question of a plaintiff's employment status is properly considered at the summary judgment stage).

The Eleventh Circuit has adopted an "economic realities/common law control" test to determine whether a worker is an employee or an independent contractor. See Cobb, 673 F.2d at 340-41. Specifically, the Eleventh Circuit has instructed that the Court must consider "the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee." Id. at 341. Moreover, "[c]onsideration of all of the circumstances surrounding the work relationship is essential, and no one factor is

determinative." Id. at 340 (quoting Spirides v. Reinhardt, 613 F.2d 826, 831-32 (D.C. Cir. 1979)).

### 1. *Common law agency principles demonstrate that the musicians are independent contractors.*

A review of the common law agency principles that determine whether a person is an independent contractor or an employee requires the conclusion that Pops musicians are independent contractors, not employees. These factors include:

> (1) the intention of the parties; (2) the skill required in the particular occupation; (3) the party furnishing the equipment and the place of work; (4) the method of payment, whether by time or by the job; (5) the type of employment benefits provided; (6) the manner in which the work relationship is terminated; (7) the importance of the work performed as part of the business of the employer; and (8) the manner in which taxes on income is paid.

Daughtrey v. Honeywell, 3 F.3d 1488, 1496 (11th Cir. 1993) (internal citations omitted)[2]; see also Cobb, 673 F.2d at 340 (identifying similar factors). In addition, the Court must consider the right of the hiring party to control the worker, including not only the results that are to be achieved, but the "manner and means by which the work is accomplished." Daughtrey, 3 F.3d at 1496; see also Cobb, 673 F.2d at 341. Applying these common law principles here, it is clear that the musicians are independent contractors.

Indeed, two courts have considered the specific question of whether musicians were independent contractors or employees under similar factual circumstances. In both Florida Gulf Coast Symphony, Inc. v. Department of Labor and Employment Security, 386 So. 2d 259 (Fla. 2d DCA 1980) and Lerohl v. Friends of Minnesota Sinfonia, 322 F.3d 486 (8th Cir. 2003), the

---

[2] Although the Daughtrey case dealt with a claim arising under the ADEA, the ADEA and Title VII define "employee" identically and both claims are analyzed under the hybrid economic realties test. See Daughtrey, 3 F.3d at 1495.

courts applied common law agency principles and concluded that musicians, like the musicians here, were independent contractors.

### a. Hiring party's right to control

As the court in Lerohl explained, "work by independent contractors is often, if not typically, performed to the exacting specifications of the hiring party," and this does not change their status as contractors. Lerohl, 322 F.3d at 490 (citing Cmty. For Creative Non-Violence v. Reid, 490 U.S. 730, 735-36 (1989), in which the Supreme Court noted that a sculptor remained an independent contractor even though the hiring party defined the scene to be sculpted and the details of its appearance). Thus, the fact that a director may select the music to be performed and the manner in which it is collectively played is not determinative of the musician's status. Id. The Lerohl court went on to explain that the real inquiry as to control is not "whether [Pops] could tell [the musicians] where to sit and when to play during a concert or a rehearsal," but, rather, whether the musicians retained freedom of choice, for example, by choosing which performances they would accept and by retaining the discretion to perform elsewhere. Id.; see also Florida Gulf Coast Symphony, 396 So. 2d at 264 (including, among factors supporting independent contractor status, the fact that the musicians were free to pursue other job opportunities at their discretion).

Here, the minimal amount of control the Pops exercised over the overall performance is not indicative of an employer-employee relationship. First, Pops did not contract directly with the musicians; rather, Pops contracted with FJD to provide a certain number of musicians and FJD was responsible for selecting and providing the individual musicians.[3]  **(SOF, 3-4.)**

---

[3] In addition to FJD, the Pops also contracted directly one additional contractor, a Technical Director/Stage Manager. The Pops contracted most recently with J.J. Goebel (d/b/a Sunset Corporation, Inc.) for this service and with Eric Williams (d/b/a The Special Services Group) prior. **(SOF, 15.)** Like

Moreover, FJD had the authority and discretion to hire and fire the musicians, not the Pops. (**SOF, 14.**) Additionally, as in Lerohl and Florida Gulf Coast Symphony, the musicians here were free to pursue other opportunities, including performing with other musical groups or orchestras, during their association with the Pops. (**SOF, 8.**) Indeed, the Independent Contractor Agreements signed by each of them with FJD expressly states that they are "free to engage in his/her own activities and perform elsewhere . . . ." (**SOF, 8.**) The musicians typically attended only one or two rehearsals per performance series and the performances themselves, and individual practice was left entirely up to the musician and was in no way controlled by the Pops. (**SOF, 2, 6.**) Moreover, although the Pops gave instruction as to the overall performance, as musicians, they controlled the manner in which they played their instruments and, thus, ultimately, the end result of the performance. See Hanson v. Friends of Minnesota Sinfonia, 181 F. Supp. 2d 1003, 1008 (D. Minn. 2002) (aff'd Lerohl, 322 F.3d 486.); see Florida Gulf Coast Symphony, 386 So. 2d at 263 (finding insufficient evidence that the musicians were under the control of the symphony). Considering the nature and circumstances of the musicians' relationship with the Pops, the Pops exerted little control over the means of their work consistent with their status as independent contractors.

    b.  The intention of the parties

  The next factor to consider is the intention of the parties. Here, it is clear that both Pops and the musicians intended the musicians to be, and considered them to be, independent contractors. (**SOF, 9, 10, 11, 13.**) Each musician signed an Independent Contractor Agreement

---

FJD and the musicians, Goebel and Williams were independent contractors, not employees of the Pops. They signed independent contractor agreements, which provided, among other things, that they were paid on a per-service basis, were not provided with any benefits, and could terminate the contract on proper notice. (**SOF, 15.**) They did not receive benefits from the Pops and the Pops did not withhold any taxes from their pay. Additionally, like the musicians, they were free to pursue other opportunities. (**SOF, 15.**) As set forth below, all these factors support their status as independent contractors, not employees.

that plainly states that the musician is an independent contractor. (**SOF, 6.**) Their intended status as independent contractors is supported by additional facts including the tax treatment of the musicians, the fact that no payroll taxes were withheld or benefits provided, and the belief of the musicians themselves who understood that they were independent contractors, not employees of the Pops. (**SOF, 9-13.**) Indeed, Plaintiff, herself, recognized the musicians as independent contractors, instructing the Pops' employees to treat them as such and not as employees. (**SOF, 16.**)

    c. <u>The skill required in the particular occupation</u>.

Courts have recognized that professional musicians require a high level of skill and proficiency, <u>Hanson</u>, 181 F. Supp. 2d at 1008; <u>Florida Gulf Coast Symphony</u>, 386 So. 2d at 261, and that this is a factor that supports an independent contractor relationship. FJD recruits skilled, professional musicians to fill the positions needed by the Pops for each performance. (**SOF, 5.**) The musicians do not receive training from the Pops and are expected to be proficient in their instrument. (**SOF, 5.**) Because the musicians are skilled professionals, this factor supports their treatment as independent contractors.

    d. <u>The party furnishing the equipment and the place of work</u>

The musicians contracted by FJD were required to have and use their own instruments (the primary piece of "equipment" needed for their performances), which is consistent with their independent contractor status. See <u>Santelices v. Cable Wiring</u>, 147 F. Supp. 2d 1313, 1320 (S.D. Fla. 2001) (noting that owning one's own equipment and tools used on the job is analogous with independent contractor status). Although Pops may have provided the music, rehearsal and performance facilities, the musicians themselves provide their own attire, instruments, and maintenance for those instruments, as well as their own practice sites. (**SOF, 6.**) Thus, the

musicians are the source of the majority of their own equipment and bear the expense of that equipment, further supporting their status as independent contractors.  See Hanson, 181 F. Supp. 2d at 1008; Florida Gulf Coast Symphony, 386 So. 2d at 261, 264.

        e.        The method of payment, whether by time or by the job

"Payment by the project suggests the performer is an independent contractor."  Hanson, 181 F. Supp. 2d at 1009 (citing Reid, 490 U.S. at 753).   Here, per their Musician Agreements, Pops musicians were paid on a per service (or concert) basis and received payment before the end of each concert series.  (**SOF, 12.**)  Moreover, the musicians are paid by FJD, not by the Pops, as they contract directly with FJD.  (**SOF, 12, 13.**)  In short, the musicians are paid per project by FJD as independent contractors.

        f.        The type of employment benefits provided and manner in which income taxes are paid

As explained above, Pops did not contract with the musicians, but rather through FJD, and paid FJD for its services in procuring musicians for Pops performances.  (**SOF, 12.**)  Thus, Pops did not provide any income directly to the musicians.  (**SOF, 13.**)  The musicians were paid by FJD on a per performance basis and FJD did not withhold any taxes from their payments, which is strongly indicative of their independent contractor status.  (**SOF, 12.**)  FJD provided the musicians with an IRS Form 1099 at the end of the year.  (**SOF, 12.**)  Moreover, the musicians did not receive any benefits, such as contributions to pension plans, workers compensation funds, or unemployment insurance, from either Pops or FJD.  (**SOF, 12, 13.**)  Each of these factors, individually and together, compels a conclusion that the musicians are independent contractors. See Lerohl, 322 F.3d at 492 (noting that it is "highly significant that the [hiring party] withheld no income or FICA taxes, documented musician payments on an IRS Firm 1099, and provided no employee benefits other than contributions to an independent union pension fund").

g. <u>The manner in which the work relationship is terminated</u>

Here, the musicians contract with FJD for services and FJD has the sole discretion and authority to select, retain, hire and fire them. (**SOF, 14.**) Thus, this factor further supports the conclusion that the musicians are not employees of Pops.

h. <u>The importance of the work performed as part of the business of the employer</u>

The services provided by the musicians – performing in Pops' concerts – constitute a significant aspect of the Pops' business. However, as the court in <u>Florida Gulf Symphony</u> noted, this element is "not inconsistent with the interdependent relationships which may exist between a principal and an independent contractor." 386 So. 2d at 263. Thus, the factor is not determinative of the musician's status here, particularly in light of the previous factors.

In fact, looking at all of the factors taken together, it is clear that, as in <u>Lerohl</u> and <u>Florida Gulf Coast Symphony</u>, these musicians are independent contractors. Just like the musicians in <u>Florida Gulf Coast Symphony</u> and <u>Lerohl</u>, the musicians who perform for the Defendant qualify as independent contractors because they:

> [A]re engaged in a distinct occupation; are considered by petitioner to be independent contractors; spend more than two-thirds of their time in activities over which [Defendant] has no control whatsoever; are responsible for the manner in which the musical effects are achieved; supply their own instruments; receive the bulk of their income from sources other than the [Defendant]; are paid on a per job basis, and are free to pursue other job opportunities in the music field at their discretion.

<u>Florida Gulf Coast Symphony,</u> 386 So. 2d at 264.

2. *The "economic realities" also demonstrate that the musicians were independent contractors, not employees.*

Finally, considering the "economic realities" of the musicians' situation "in light of the common law principles of agency and the right to control possessed by the employee," <u>Cobb</u>,

10

673 F.2d at 340-41, discussed above, it is clear that the musicians are not employees of Pops. Pops' seasons are only six months out of the year and there are only 37 total performances during that six-month period, the musicians are free to engage in other activities when not performing with the Pops – in fact, the contract specifically states this – and many of the musicians either play with other orchestras or musical groups or have regular "day jobs". (**SOF, 2, 8-11.**) The musicians are not "dependent" on the Pops for their livelihood and, in light of all the overwhelming evidence that these musicians are independent contractors, the Court should conclude that they are, in fact, independent contractors, not employees of Pops, and, as a result, Pops is not an "employer" for purposes of Title VII.

      B.    <u>Even if the Musicians were "Employees", the Pops still is not an "Employer" under Title VII and the FCRA.</u>

Moreover, even if the musicians could somehow be considered "employees" of the Pops (which they are not), the Pops still would not fall within the definition of "employer" under Title VII and the FCRA. As explained above, under Title VII, an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees *for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . .*" 42 U.S.C. § 2000e(b) (emphasis added). Here, the musicians and contractors were engaged by the Pops for a six-month season, which consisted of 37 performances and 11 rehearsals, with some rehearsals and performances occurring on the same day. (**SOF, 2.**) Thus, even if these contractors could be considered employees, they were not working "each working day in each of twenty or more calendar weeks"; rather, they worked for approximately 42 days out of a six month period. See <u>Stinnett</u>, 301 F.3d at 615-16 (granting summary judgment for defendant where plaintiff failed to establish that defendant had 15 or more employees on each work day during relevant time period).

11

**III.     Once the Court Dismisses Plaintiff's Title VII Claims, the Court Lacks Jurisdiction Over the State Law Claims.**

Finally, upon dismissing Plaintiffs Title VII claims, the Court may, and should, decline to exercise supplemental jurisdiction over Plaintiff's state law tort claims. See 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction). The Eleventh Circuit has noted that "if the federal claims are dismissed prior to trial, [United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)] strongly encourages or even requires dismissal of the state claims." Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999). Here, once the Court has dismissed Plaintiff's Title VII and FCRA claims, the only remaining claims are state law claims for assault, battery, and intentional infliction of emotional distress. Thus, pursuant to 28 U.S.C. § 1367 and Mergens, the Court should decline to exercise jurisdiction over these claims.

WHEREFORE, Defendant The Palm Beach Pops, Inc., respectfully requests that the Court grant this Motion for Summary Judgment on Counts IV and V of the Amended Complaint and dismiss Counts I through III of the Amended Complaint for lack of jurisdiction, and grant such other and further relief as the Court deems just and appropriate.

Dated February 28, 2011

Respectfully submitted,

**s/Keith E. Sonderling**
G. JOSEPH CURLEY
Florida Bar No. 571873
e-mail:  jcurley@gunster.com
KEITH E. SONDERLING
Florida Bar No. 0057386
Email:  ksonderling@gunster.com
Gunster, Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL  33401-6194
Telephone: 561-655-1980
Facsimile:  561-655-5677
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing, generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/Keith E. Sonderling
Keith E. Sonderling

**SERVICE LIST**

**Jill Kaplan v. Robert Lappin and The Palm Beach Pops, Inc.**
**United States District Court, Southern District of Florida**
**Case No. 10-80227-CIV-MARRA**

**Electronic Mail Notice List**

Craig R. Zobel, Esq.
Reid & Zobel, P.A.
Esperante Building, Suite 1160
222 Lakeview Avenue
P.O Drawer 2926 (33402-2926)
West Palm Beach, Florida 33401
Telephone: 561-659-7700
Facsimile: 561-659-6377
e-mail: czobel@ridzobel.com
Attorney for Plaintiff


G. Joseph Curley, Esq.
Keith E. Sonderling, Esq.
Gunster, Yoakley & Stewart, P.A.
777 S. Flagler Drive, Suite 500
West Palm Beach, FL 33401
Telephone:  561-655-1980
Facsimile:  561-655-5677
e-mail:  jcurley@gunster.com
e-mail:  ksonderling@gunster.com
Attorneys for Defendants


**Manual Notice List**

None.

WPB 1111025.1