UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 10-80227-CIV-MARRA

JILL KAPLAN,

    Plaintiff,

v.

THE PALM BEACH POPS, INC.,
and ROBERT LAPPIN,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, Robert Lappin ("Lappin") and the Palm Beach Pops, Inc. ("Pops") (collectively, "Defendants"), pursuant to Rule 56, Fed. R. Civ. P. and Rule 7.5, S.D. Fla. L.R., hereby file this Motion for Summary Judgment against Plaintiff, Jill Kaplan ("Plaintiff"), and in support thereof, state as follows:

### SUMMARY OF ARGUMENT

This case is about a failed consensual, long-term sexual affair between an employee and her supervisor. Plaintiff, who began working for Pops in December 2004, became involved in a sexual relationship with her supervisor, Lappin, in June 2005. (SOF, ¶ 2, 4).[1] Plaintiff, a 49 year-old woman who has been divorced three times (including a third marriage to her former business partner), began her sexual relationship with Lappin around the same time she was ending her relationship with her fourth fiancée. **(SOF, ¶ 2, 4)**. Lappin was (and still is) engaged to another woman throughout his affair with Plaintiff – a relationship Plaintiff was well aware of. (SOF, ¶ 4).

---

[1] Citations in this Motion to Defendant's Statement of Undisputed Material Facts shall be referenced as (SOF, [paragraph number]).

The voluntary relationship between Plaintiff and Lappin carried on for *approximately four years*, and was extremely sexual in nature. (SOF, ¶ 5). On at least *eight* different occasions beginning in early 2006, Plaintiff and Lappin regularly visited sex clubs together in New York and Florida. (SOF, ¶ 7). Plaintiff readily admits to having oral sex with Lappin approximately a *hundred* times, and to masturbating in Lappin's presence from time to time. (SOF, ¶ 7).

Plaintiff, who had been seeing a social worker to address her alcohol problems, apparently felt the need to also discuss her affair with Lappin to the social worker, including the fact that Lappin was engaged to another woman. (SOF, ¶ 12). At one point during a counseling session, Plaintiff told the social worker that she thought Lappin and his fiancée were on the verge of breaking up. (SOF, ¶ 12). Ultimately, the social worker told Plaintiff that she was experiencing what most people in an affair experience because Lappin was "totally unavailable" and advised Plaintiff to "get out of the relationship with Mr. Lappin and find another job." (SOF, ¶ 12).

In January 2009, Plaintiff voluntarily tendered her letter of resignation to the Pops and left her employment with the Pops months later. **(SOF, ¶ 14)**. It is undisputed that the Pops did not terminate Plaintiff or otherwise attempt to reduce her salary or benefits. **(SOF, ¶ 16)**. Her decision to leave the Pops was completely voluntary.

Now that Plantiff and Lappin's personal relationship has ended, Plaintiff has filed this lawsuit and has brought claims against Lappin and the Pops for assault, battery, intentional infliction of emotional distress, and hostile work environment discrimination and harassment on the basis of her gender under Title VII and the Florida Civil Rights Act (FCRA).[2] Plaintiff seeks

---

[2] Plaintiff's FCRA claims are analyzed under Title VII jurisprudence. See Carabello v. South Stevedoring, Inc., 932 F. Supp. 1462, 1466 (S.D. Fla. 1996) ("Because the FCRA is patterned after Title VII, 'federal case law dealing with Title VII also applies to the FCRA.'") (quoting Kelly v. K.D. Construction of Florida, Inc., 866 F. Supp. 1406, 1410 (S.D. Fla. 1994).

2

to recover a wide range of damages for her claims including pain and suffering, loss of her house, loss of income, loss of medical and dental benefits, and punitive damages in the amount of $5,000,000. (Amended Complaint, ¶ 20).

As addressed in a separately filed Motion for Summary Judgment, Title VII does not apply to Plaintiff's claims because Plaintiff's former employer, the Pops, employed less than 15 employees [D.E. 123]. Even if Title VII applied to this case, which it does not, Plaintiff cannot show harassment or discrimination on the basis of Plaintiff's gender. The Courts have repeatedly distinguished claims based on discriminatory animus from those based on *personal animosity* due to failed relationships. This case falls in the latter category, and those types of claims are not covered by Title VII.

Plaintiff's Title VII claims would also fail because Plaintiff voluntarily resigned from the Pops and cannot show any tangible employment action. Plaintiff's salary was never reduced, her work conditions were never altered, and she never was forced to take a reduction in benefits. Ultimately, Plaintiff is the one who decided to leave the Pops for her own personal reasons. The courts have consistently held that a constructive discharge cannot be based on an employee's subjective feelings.

Plaintiff's state law claims for assault and battery also fail in light of the obvious, consensual nature of Plaintiff and Lappin's long-term sexual relationship. To the extent Plaintiff is basing her assault or battery claims on Lappin's sexual contact with Plaintiff, the overwhelming evidence in this case shows Plaintiff consented to Lappin's physical touching. Put simply, this case is a product of Plaintiff's personal animosity towards Lappin as a result of their failed sexual affair. It is not the result of any unwelcome touching by Lappin or any alleged

harassment or discrimination of Plaintiff because she is a female. The Court should grant summary judgment in favor of Defendants and against Plaintiff.

## MEMORANDUM OF LAW

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides the framework for deciding a motion for summary judgment. As the rule provides, "[summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. 56(c)(2). An issue of fact is "material" if it might affect the outcome of the case under governing law. See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 248 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U. S. 317, 322 (1986).

To defeat a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Evers v. GMC, 770 F. 2d 984, 986 (11th Cir. 1985). "Once a party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. GMC, 758 F. 2d 839, 840 (2d Cir. 1985). A plaintiff cannot avoid summary judgment based upon mere subjective beliefs; they do not create issues of fact. Ramsey v. Leath, 706 F. 2d 1166, 1170 (11th Cir. 1983).

**II.  Even if Title VII Applied to this Case, Which it Does Not, Plaintiff's Claims Fail Because Title VII Does Not Cover Claims Based on Failed Personal Relationships.**

To establish a prima facie case of sexual harassment under Title VII, a plaintiff must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) that there is a basis for holding the employer liable. Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1200 (11th Cir. 2001); Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 508 (11th Cir. 2000).

Plaintiff attempts to mislead the Court by asserting that her alleged harassment and discrimination at the workplace was based on her gender, instead of the deterioration of her consensual four year sexual affair with Lappin. Title VII does not permit individuals to assert claims for alleged mistreatment based on failed personal relationships at work. The Eleventh Circuit has repeatedly held:

> Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of sex discrimination. The plaintiff cannot turn a personal feud into a sex discrimination case.

Succar v. Dade County School Board, 229 F.3d 1343, 1345 (11th Cir. 2000) (teacher failed to establish the element of his case that his sex was the underlying reason for harassment he allegedly suffered from another teacher following a consensual sexual relationship) (citing McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986).

In Succar, the Eleventh Circuit affirmed the district court's grant of summary judgment and concluded that defendant's alleged harassment of plaintiff was motivated not by his gender, but rather by defendant's contempt for plaintiff following their failed relationship. The Eleventh

5

Circuit rejected a similar claim bought by a plaintiff who also had a failed sexual relationship with a co-worker.  "[T]his court has distinguished between actions based on discriminatory animus and those based on *personal animosity* from failed relationships."  Pipkins, 267 F. 3d at 1200 (11th Cir. 2001) (affirming summary judgment for defendant and holding that "harassment, if any, suffered by [plaintiff] was not the result of her gender, but rather in response to possible disappointment [her superior co-worker] may have experienced as a result of their failed relationship").

Other courts have reached similar results.  In EEOC v. Reynolds Metals Co., 212 F. Supp. 2d 530, 535 (E.D. Va. 2002), the plaintiff filed a sexual harassment claim after a co-worker with whom she had a previous consensual relationship called her a "whore" and a "slut."  The court granted summary judgment in favor of the defendant and concluded that in light of the plaintiff's prior sexual relationship with the co-worker, the alleged offensive conduct was "motivated out of the end of the affair, rather than by [plaintiff's] gender."  Id. at 536.

Compared with those cases cited above where the court rejected claims for harassment and discrimination after failed sexual relationships, Plaintiff's argument in this case is even weaker.  Pops never terminated Plaintiff's job, nor reduced her compensation or health benefits in any way.  (SOF, ¶ 16).  One of the required elements under a Title VII harassment claim is that the harassment was so "sufficiently severe or pervasive to alter the terms and conditions of employment."  Pipkins, 267 F. 3d at 1200.  The terms and conditions of Plaintiff's employment with Pops were never adversely affected.  **(SOF, ¶ 16)**.  In fact, Plaintiff's salary approximately doubled from the time she began employment with the Pops until the time she voluntarily resigned.  **(SOF, ¶ 16)**.

For her own personal reasons, Plaintiff made the voluntary decision to resign from the Pops. Put simply, Plaintiff's relationship with Lappin had deteriorated, she realized that Lappin was not going to leave his fiancée, and she decided it was in her best personal interest to leave the Pops, just as her social worker had advised. (SOF, ¶ 12). The fact that her four year sexual affair with Lappin had come to an end, and that she now bears some personal animosity toward Lappin, does not give rise to a claim under Title VII.

### III. Even if Title VII Applied to this Case, Which it Does Not, Plaintiff's Claims Fail Because Plaintiff Cannot Show There was a Constructive Termination.

A constructive termination occurs when a discriminatory employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003) (citing Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997). "The standard for proving constructive discharge is higher than the standard for proving a hostile work environment." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1232 (11th Cir. 2001).

Unlike the traditional constructive termination claim, Plaintiff cannot show any evidence that there was any tangible employment action taken against her that changed her employment status or situation. For example, as noted above, Plaintiff did not suffer any sort of demotion, cut in pay, or transfer to a position in which Plaintiff would be forced to work under unbearable working conditions. **(SOF, ¶ 16)**. To the contrary, her salary increased over time, her job description remained the same, and she enjoyed full health benefits up through the date she left the Pops. **(SOF, ¶ 16)**. This evidence weighs heavily against Plaintiff's claim under Title VII. See Trautvetter v. Quick, 916 F.2d 1140 (7th Cir. 1990) (teacher who had become involved in a sexual relationship with her principal failed to show the existence of a tangible adverse employment action because she was not discharged nor denied a promotion or other job benefit).

7

The only evidence Plaintiff can show is that her four year sexual affair with Lappin was coming to an end, and in her *subjective* view, it was in her best *personal* interest to not continue working at the Pops. This does not create the type of "intolerable" working condition that is protected under Title VII. "In evaluating constructive discharge claims, we do not consider the plaintiff's *subjective* feelings. Instead, we employ an objective standard." Hipp, 252 F.3d at 1232; Thomas v. Schafer, Case No. 2:05-cv-411, 2008 WL 2441040, * 9 (M.D. Ala. June 16, 2008) (granting summary judgment for defendant and holding "[plaintiff's] claims are almost textbook examples of the *subjective* complaints related to allegations of humiliation, unfair criticism, marginalization, and displeasure with working conditions that are insufficient to constitute a claim for constructive discharge); Wingfield v. South University of Florida, Inc., Case No. 8:09-cv-01090, 2010 WL 2465189 (M.D. Fla. June 15, 2010) (summary judgment granted in favor of defendant because merely *subjective* fears were insufficient grounds upon which a finding of constructive termination could be based).

Here, Plaintiff suffered no tangible adverse employment action nor were there any change in the terms or conditions of her employment. Based on an *objective* standard, it cannot be said that Plaintiff should have felt compelled to resign. Accordingly, Plaintiff's claim for constructive termination must fail.

**IV.    Plaintiff's State Law Claims for Assault and Battery Fail Because Plaintiff Consented to Lappin's Physical Touching and was Involved in a Four Year Sexual Relationship with Him.**

A.    Nature of Plaintiff's Assault and Battery Claims

The Florida Supreme Court has defined an assault to be "any intentional, unlawful offer or corporeal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a well-founded fear of imminent peril, coupled

8

with the present ability to effectuate the attempt if not prevented." <u>Winn v. Lovett Grocery Co. v. Archer</u>, 171 So. 214, 217 (Fla. 1936). "The creation of a well-founded fear of imminent peril in the victim is an essential element of tortious assault. An alleged victim who is unaware of an attempted assault, or who is not placed in fear of imminent harm as a result of the attempted assault, has suffered no compensable harm." 3A Fla. Jur. 2d, Assault-Civil Aspects, § 7. As alleged in her Amended Complaint, Plaintiff seems to base her claim for assault upon the theory that "Lappin made an intentional unlawful offer of offensive *sexual* contact toward Plaintiff, creating a reasonable fear of imminent peril." Amended Complaint, ¶ 15 (emphasis added).

In Florida, "[b]attery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." <u>Qulling v. Price</u>, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005) (citing <u>Paul v. Holbrook</u>, 696 So. 2d 1311 (Fla. 5th DCA 1997). As to Plaintiff's claim for battery, Plaintiff alleges that "Lappin's actions of touching Plaintiff and forcing her to accede to his *sexual* demands was offensive." Amended Complaint, ¶ 32. (emphasis added). As such, it appears Plaintiff's assault and battery claims are premised on some sexual contact by Lappin, or an offer of sexual contact by Lappin that allegedly created a reasonable fear of imminent peril by Plaintiff. Neither claim has any merit. Any sexual contact Lappin made with Plainitff was consensual. Moreover, Plaintiff cannot show that any statement or conduct by Lappin caused her to be in fear of imminent peril.

  C. <u>Plaintiff Consented to any Physical Touching by Lappin.</u>

In Florida, consent is a defense to a claim of battery. <u>Hernandez v. K-Mart Corp.</u>, 497 So. 2d 1259, 1260 (Fla. 3rd DCA 1996); <u>Hogan v. Tafzel</u>, 660 So. 2d 350 (Fla. 5th DCA 1995). "Consent is willingness in fact for the conduct to occur, and it may be manifested by action or inaction and need not be communicated to the actor." *Restatement (Second) of Torts*¸ § 892.

9

Here, Plaintiff consented to any sexual touching by Lappin or any offers by Lappin to sexually touch her.  The following evidence shows the obvious consensual nature of Plaintiff and Lappin's sexual relationship:

- Plaintiff maintained a four year sexual affair with Plaintiff.  (SOF, ¶ 5);

- Plaintiff admitted that she periodically told Lappin that she loved him. (SOF, ¶ 6);

- When Plaintiff and Lappin started their affair, Plaintiff testified that she didn't resist.  "I just believed that this would blow over.  Don't make a big deal, he's going to go [up to New Hampshire] in May, it will reset itself, just let it be for now." (SOF, ¶ 5);

- Plaintiff told her good friend and confidant, Terry Spence, that she and Lappin had been seeing each other.  She also told Spence that Lappin was also "with some woman he had been with for a while" (SOF, ¶ 8);

- Plaintiff admitted that during the course of their affair, she went to sex clubs in New York and Florida with Lappin at least *eight* times. (Kaplan SOF, ¶ 7);

- Plaintiff admitted that during the course of their affair, she had oral sex with Lappin approximately *a hundred* times.  (SOF, ¶ 7);

- Plaintiff admitted that she would regularly have sex with Lappin at her house in Florida and on frequent trips to Las Vegas and New York. (SOF, ¶ 7);

- Plaintiff admitted to texting Lappin photos of herself in a revealing bathing suit. (SOF, ¶ 7);

- Plaintiff admitted to masturbating in Lappin's presence. (SOF, ¶ 7);

- Plaintiff testified she purchased adult movies and sex toys for Lappin. (SOF, ¶ 7);

- One musician at the Pops, James Berman, observed Plaintiff walking into Lappin's office during a meeting where Plaintiff proceeded to "press[] her body on top of [Lappin's]" and "press[ed] her breasts against his chest." … "I couldn't believe she did this in front of me." (SOF, ¶ 6);

- Another one of Plaintiff's co-workers at the Pops, Angela Kimberly, saw Plaintiff "naked as a jay bird" in Lappin's office late one night and then noticed Plaintiff quickly attempting to close the blinds. (SOF, ¶ 6);

10

Given the totality of the evidence in this case, no reasonable juror could conclude that Plaintiff and Lappin were not in a consensual sexual relationship and that Plaintiff had not consented to Lappin's touching of Plaintiff. Likewise, no reasonable juror could conclude that any statements by Lappin or offers of sexual contact by Lappin created any fear of *imminent* harm to Plaintiff. Because of the obvious consensual nature of Plaintiff and Lappin's four year sexual affair, Plaintiff has no viable cause of action against Lappin for assault or battery.

### VI. If the Court Dismisses Plaintiff's Title VII Claims, the Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims

Finally, upon dismissing Plaintiff's Title VII claims, the Court may, and should, decline to exercise supplemental jurisdiction over Plaintiffs state law tort claims. See 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction). The Eleventh Circuit has noted that "if the federal claims are dismissed prior to trial, [United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)] strongly encourages or even requires dismissal of the state claims." Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999). Here, once the Court has dismissed Plaintiff's Title VII and FCRA claims, the only remaining claims are state law claims for assault, battery, and intentional infliction of emotional distress. Thus, pursuant to 28 U.S.C. § 1367 and Mergens, the Court should decline to exercise jurisdiction over these claims.

WHEREFORE, Defendants, Robert Lappin and The Palm Beach Pops, Inc., respectfully request that the Court grant this Motion for Summary Judgment, and grant such other and further relief as the Court deems just and appropriate.

Dated: February 28, 2011

Respectfully submitted,

**s/Keith E. Sonderling**
G. JOSEPH CURLEY
Florida Bar No. 571873
e-mail:  jcurley@gunster.com
KEITH E. SONDERLING
Florida Bar No. 0057386
Email:  ksonderling@gunster.com
Gunster, Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL  33401-6194
Telephone: 561-655-1980
Facsimile:  561-655-5677
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

By: **/s/Keith E. Sonderling**
Keith E. Sonderling

## SERVICE LIST
### Jill Kaplan v. Robert Lappin and The Palm Beach Pops, Inc.
### United States District Court, Southern District of Florida
### Case No. 10-80227-CIV-MARRA

**Electronic Mail Notice List**

Craig R. Zobel, Esq.
Reid & Zobel, P.A.
Esperante Building, Suite 1160
222 Lakeview Avenue
P.O. Drawer 2926 (33402-2926)
West Palm Beach, Florida 33401
Telephone: 561-659-7700
Facsimile: 561-659-6377
e-mail: czobel@ridzobel.com
Attorney for Plaintiff

G. Joseph Curley, Esq.
Keith E. Sonderling, Esq.
Gunster, Yoakley & Stewart, P.A.
777 S. Flagler Drive, Suite 500
West Palm Beach, FL 33401
Telephone: 561-655-1980
Facsimile: 561-655-5677
e-mail: jcurley@gunster.com
e-mail: ksonderling@gunster.com
Attorneys for Defendants

**Manual Notice List**

None.

WPB 1109474.2