UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:10-80227-CIV-MARRA

JILL KAPLAN,

   Plaintiff,

v.

THE PALM BEACH POPS, INC.,
and ROBERT LAPPIN,

   Defendants.

            /

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [D.E. 126]**

   Defendants, Palm Beach Pops, Inc. (the "Pops"), and Robert Lappin ("Lappin"), pursuant

to Rule 7.5, S.D.Fla.L.R., file their Statement of Undisputed Facts in Support of Defendants'

Motion for Summary Judgment, and state as follows:[1]

   1.  The Pops is a Florida non-profit organization performing pops concerts in the

South Florida area.  Plaintiff is the former Vice President and General Manager of the Pops.

(Amend. Compl. ¶ 3).  Defendant Lappin is the CEO of the Pops and is its "maestro." (Lappin

Dep. 311:1-3).

   2.  Plaintiff was forty-two years old when she began her employment at the Pops in

December 2004.  (Kaplan Dep. 32:16; 39:11-12).  At the time Plaintiff began her employment

with the Pops, she had been married and divorced three times and was currently engaged to her

---

[1] The affidavits and deposition testimony referenced and relied on herein have been contemporaneously
filed with this Statement of Undisputed Facts. Affidavits are cited as:  ([Witness last name], Aff. [paragraph
number]).  Citations to deposition testimony are cited as: ([Witness last name, Dep. [page]:[line] –
[page][line]).

fourth fiancée.  (Kaplan Dep. 139/20-22).  Some of her former husbands and fiancées were either her bosses or business associates.  (Chabon Dep. 183:25 – 184:1-6).

3.      Plaintiff was originally hired at the Pops as the Director of Marketing and Public Relations at a salary of $52,500.00.  (Id. at 138:21-22; Lappin Dep. 309:11-15).  After six months of employment, Plaintiff was promoted to Vice President and General Manager and her salary was increased to $75,000.00.  (Lappin Dep. 314:1-5).

4.      In early 2005, Plaintiff and Lappin became involved in a sexual relationship.  At the time their relationship began, Lappin was (and still is) engaged to another woman.  (Lappin Dep. 71:5-8).  Around this same time, Plaintiff was ending her relationship with her fourth fiancée. (Kaplan Dep. 184:9-10).

5.      Plaintiff and Lappin's relationship lasted for approximately four years. (Kaplan Dep. 209:4-1; Kaplan Dep. 315:4-11).  At the time their affair began, Plaintiff testified that she did not resist as she thought the sexual affair would be very short-lived: "I just believed that this would blow over.  Don't make a big deal, he's going to go [up to New Hampshire] in May, it will reset itself, just let it be for now."  (Kaplan Dep. 145:7-146:7).

6.      However, the affair did not "blow over," and instead lasted four years. (Logan Dep. 15:18-24). Plaintiff became more enamored with Lappin, and she admitted she periodically told Lappin that she loved him. (Kaplan Dep. 85:4-14).  As their affair continued, Plaintiff was not shy about showing her affection for Lappin in the office.  For instance, one musician at the Pops observed Plaintiff walking into Lappin's office during a meeting one day where Plaintiff proceeded to "press[] her body on top of [Lappin's]" and "press[ed] her breast against his chest … I couldn't believe she did this in front of me." (Berman Dep. 41:18-42:15).  On another occasion, another one of Plaintiff's co-workers at the Pops saw Plaintiff "naked as a jay bird" in Lappin's

office late one night and then noticed Plaintiff quickly attempting to close the blinds. (Kimberly Dep. 32:8 – 35:13).

7.  Plaintiff's outward affection for Lappin was certainly not limited to these isolated occurrences at the office.  Plaintiff admitted that throughout the course of their affair:

- She would regularly have sex with Lappin at *her* house in Florida and on frequent trips to Las Vegas and New York  (Kaplan Dep. 188:23-25; 100:20-23);

- She had oral sex with Lappin *a hundred* times (Kaplan Dep. 249:5-7);

- She went to sex clubs in New York and Florida with Lappin at least *eight* times (Kaplan Dep. 82:12-83:5);

- She would masturbate in Lappin's presence (Kaplan Dep. 249:8-11);

- She purchased adult movies and sex toys with Lappin (Kaplan Dep. 249:14-19; 251:10-252:9); and

- She texted Lappin photos of herself in a revealing bathing suit (Kaplan Dep. 218:11-219:1).

8.  As their affair continued, Plaintiff told her good friend and confidant, Terry Spence, that she and Lappin had been seeing each other, even though Lappin was also "with some woman he had been with for a while." (Spence Dep. 41:2-12).

9.  Plaintiff's mother thought if Lappin's fiancée was not in the picture that Plaintiff would be with Lappin and that he would "be a good catch financially" "because he is rich."  (R. Kaplan Dep. 60:12-22).

10.  Throughout her employment and relationship with Lappin, Plaintiff struggled with alcohol problems, and in July 2005, she was arrested for a DUI.  (Kaplan Dep. 34:17-19).  Due to Plaintiff's intoxication at many work functions, an internal memorandum had to be sent out warning employees to refrain from drinking at Pops concerts.  (Tornetta Dep. 34:11-16).

11.  Kaplan was also experiencing health issues during her affair with Lappin and her

employment at the Pops (Kaplan Dep. 43:6-8).  Lappin and the Pops did everything they could to assist her during this period of time, including Lappin personally arranging for Plaintiff to be treated at Sloan-Kettering in New York City.  (Kaplan Dep. 46:9-21; Lappin 117:3-14).

12.     As Plaintiff's alcohol problems persisted, at the suggestion of Lappin and a close friend of hers, Plaintiff went to see a social worker, Doris Logan.  (Kaplan Dep. 55:1-25, 56:1-20). In addition to her alcohol issues, Plaintiff apparently felt the need to tell the social worker that she was having an affair with Lappin and that Lappin was engaged to another woman.  (Kaplan Dep. 98:17 – 99:11).  Plaintiff told the social worker that she had noticed that Lappin and his fiancée's relationship was strained, and that she believed Lappin and his fiancée were on the verge of breaking up.  (Kaplan Dep., 124:2-13; Logan Dep. 37:19-38:22).  Ms. Logan suggested to the Plaintiff that she was experiencing what most people in an affair experience because Lappin was "totally unavailable" as he was engaged to another woman.  (Logan Dep. 29:9-11).  Ms. Logan attempted to coach Plaintiff to "get out of the relationship with Mr. Lappin and find another job." (Logan Dep. 32:21-25).

13.     Plaintiff continued to see Ms. Logan and would keep her apprised on the status of the relationship between Mr. Lappin and his fiancée.  Ms. Logan continued to stress to Plaintiff that she didn't believe their affair was a "healthy relationship" because "Mr. Lappin was involved with another woman.  He's unavailable."  (Logan 39:24 40:2-3).  However, on their next meeting, Plaintiff continued to report "I think Bob is leaving Gloria."  (Logan Dep. 55:4).  Ms. Logan continued to encourage Plaintiff to date other people, apply for new jobs, and move out of Florida. (Kaplan  Dep.  126:9-11;  129:13-24).   Ultimately,  Plaintiff  decided  to  discontinue  seeking counseling from Ms. Logan.  (Kaplan Dep. 13:5-13).

14.     In January 2009, Plaintiff voluntarily tendered her letter of resignation to the Pops.

(Kaplan Dep. 285:24 - 286:3).  In her resignation letter, Plaintiff stated she would continue to perform her job until the end of the 2009 concert season. (Kaplan Dep. 315:4-11; Kaplan 315:4-11).  Plaintiff did not state in her resignation that her resignation had anything to do with any alleged sexual harassment. (Kaplan Dep. 286:4-6).  Plaintiff's affair with Lappin continued even after she submitted her letter of resignation (Lappin Dep. 96:2-97:7)

15.     Although Plaintiff had promised to continue in her position through the end of the concert season, she abruptly abandoned her job prior to the conclusion of the season. (Kaplan Dep. 315:4-11).  On March 29, 2009, Lappin was performing at the Colony Hotel, and, although Plaintiff was working and previously had been reprimanded for drinking on the job, she had consumed at least two glasses of wine that night and was behaving inappropriately (Kaplan Dep. 211:8-11; Briggs Dep. 23:10 - 24:1).  After the performance, a confrontation between Lappin and the Plaintiff occurred. (Briggs Dep. 23:6-19). Lappin's fiancée came to his side, at which point, Plaintiff screamed to his fiancée, "shut up, you bitch." (Lazar Dep. 28:24).

16.     After the March 29, 2009, Colony Hotel concert, Plaintiff did not return to work and failed to honor her commitment to work through the end of season.  (Kaplan Dep. 315:4-11). Pops did not terminate Plaintiff, nor was Plaintiff asked to voluntarily resign.   Plaintiff's compensation and job benefits had never been reduced, nor had her working conditions been altered in any way.  (Lappin Aff. ¶ 7).  After her voluntarily resignation and job abandonment, the Pops even offered Plaintiff a severance package and attempted to help her enroll for COBRA to ensure there was no gap in her health insurance. (Id. at ¶ 8).  Plaintiff's decision to leave was completely voluntary.  (Id.)

17.     At no time has Plaintiff ever told any current or former employee or contractor of the Pops or other confidante that Lappin was allegedly sexually harassing her. (Kaplan Dep.

87:17; Spence Dep. 42:7; Goebel Dep. 25:14-17; Nemeth Dep. 34:25 – 35:1-5; Chabon Dep. 90:21-91:1); Stabins Dep. 35:21; Kessel Dep. 34:9-11; Berman Dep. 31:15-18; Kimberly Dep. 51:19-22; Anderson Dep. 23:14; Tornetta Dep. 105:13-16; 118:11-16).   Likewise, Plaintiff never told anyone on the Board of the Pops that Lappin was sexually harassing her.  (Robinson Dep. 23:13).

18.     Plaintiff never mentioned to Ms. Logan, from whom she was seeking counseling, that Lappin was allegedly harassing her.  (Logan Dep. 71:15-16).  Plaintiff also never mentioned any such alleged harassment by Lappin to any of the high-ranking law enforcement officials Plaintiff was dating during the time of her affair with Lappin.  (Kaplan Dep. 105:6-8; Kaplan Dep. 87:9-17).

Dated February 28, 2011                          Respectfully submitted,

                                                 **s/Keith E. Sonderling**
                                                 G. JOSEPH CURLEY
                                                 Florida Bar No. 571873
                                                 e-mail:  jcurley@gunster.com
                                                 KEITH E. SONDERLING
                                                 Florida Bar No. 0057386
                                                 Email:  ksonderling@gunster.com
                                                 Gunster, Yoakley & Stewart, P.A.
                                                 777 South Flagler Drive, Suite 500 East
                                                 West Palm Beach, FL  33401-6194
                                                 Telephone: 561-655-1980
                                                 Facsimile:  561-655-5677
                                                 Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing, generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:    /s/Keith E. Sonderling
       Keith E. Sonderling

<u>**SERVICE LIST**</u>
**Jill Kaplan v. Robert Lappin and The Palm Beach Pops, Inc.**
**United States District Court, Southern District of Florida**
**Case No. 10-80227-CIV-MARRA**

**<u>Electronic Mail Notice List</u>**

Craig R. Zobel, Esq.
Reid & Zobel, P.A.
Esperante Building, Suite 1160
222 Lakeview Avenue
P.O Drawer 2926 (33402-2926)
West Palm Beach, Florida 33401
Telephone: 561-659-7700
Facsimile: 561-659-6377
e-mail: czobel@ridzobel.com
Attorney for Plaintiff


G. Joseph Curley, Esq.
Keith E. Sonderling, Esq.
Gunster, Yoakley & Stewart, P.A.
777 S. Flagler Drive, Suite 500
West Palm Beach, FL 33401
Telephone:  561-655-1980
Facsimile:  561-655-5677
e-mail:  jcurley@gunster.com
e-mail:  ksonderling@gunster.com
Attorneys for Defendants


**<u>Manual Notice List</u>**

None.